**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**UNITED STATES OF AMERICA,**

    **Plaintiff-Respondent,**

**v.**                                                 **Civ. 03-1246 JC/LCS**
                                                   **Cr.  02-0992 JC**

**ALFREDO CASTRO-PINEDA,**

    **Defendant-Petitioner.**

**MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED
DISPOSITION**

**THIS MATTER** is before the Court upon Movant's (Castro-Pineda's) Amended Motion to Vacate, Set Aside or Correct Sentence by a person in Federal Custody pursuant to 28 U.S.C. § 2255 filed September 8, 2004. (Doc. 75).[1] Castro-Pineda, currently incarcerated attacks the Sentence entered on October 21, 2002, in the case styled *United States of America v. Alfredo Castro-Pineda* and numbered CR 02-0992 JC, United States District Court for the District of New Mexico. The United States Magistrate Judge, having considered the arguments of counsel, record, relevant law, and being otherwise fully informed, finds that Castro-Pineda's Motion is not well-taken and recommends that it be **DENIED**.

**I.**      **Proposed Findings**

    **A.  Procedural History**

    1.    On October 24, 2003, Petitioner filed his Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 62). On August 2, 2004, the Court appointed Howard

---

[1] All docket numbers correspond to *United States of America v. Alfredo Castro-Pineda*, CR 02-992 JC.

L. Anderson, Esq., to represent Castro-Pineda through the CJA panel and also set Oral Argument due to the June 24, 2004 Supreme Court decision in *Blakely v. Washington*, __ U.S. __, 124 S. Ct. 2531 (2004) and its impact on Petitioner's § 2255 Motion. (Doc. 69). On August 20, 2004, the Petitioner, through counsel, filed an unopposed Motion to vacate the oral argument and to set briefing on the *Blakely* issues. (Doc. 71); *See Blakely*, 124 S. Ct. 2531. The Court granted Petitioner's Motion and entered a Briefing Order which allowed Petitioner to filed an Amended Motion which "may introduce new claims as well as re-introduce claims that were filed in the original Motion. . . [t]he Amended Motion may also address *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and discuss solely whether it should be applied retroactively." (Doc. 74).

2. On September 8, 2004 Petitioner, through counsel, filed his Amended Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 75). Petitioner's Amended Motion did not introduce any new claims or re-introduce any claims that were in his original § 2255 Motion. *See id.* Petitioner solely argued that his sentence violated the holding in *Blakely* because Petitioner had a Sixth Amendment right to have any increase in his sentence decided by a jury. *See id.*; *Blakely*, 124 S. Ct. 2531. Petitioner further argued that *Blakely* should be applied retroactively to his case. *See id.*. Finally, Petitioner argued that his Motion should be treated as a direct appeal. (Doc. 75). On September 9, 2004, the Court entered an Order suspending briefing on Petitioner's Motion until the Tenth Circuit reached a decision *United States of America v. Terrance Dewayne Heckard,* CIV 02-285 MV/LCS or "until further Order of the Court."[2] (Doc. 76).

---

[2] In *Heckard*, The Tenth Circuit had requested briefing on the issue of "whether the Supreme Court's decision in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004) should be applied retroactively to initial 28 U.S.C. § 2255 petitions." *See* Doc. 44 at 7. This docket numbers corresponds to *United States of America v. Terrance Dewayne Heckard*, CIV 02-285 MV/LCS. The docket number for the Tenth Circuit's Order is No. 03-2121.

**B.  Background**

3. On November 29, 2001 at approximately 6:00 p.m. a New Mexico State Police Agent ("NMSPA") working undercover met with a confidential source in Silver City, New Mexico in order to purchase one pound of methamphetamine at Petitioner's residence.[3] (Doc. 1).  Though Petitioner was not present, the NMSPA was able to purchase the methamphetamine from another occupier of the residence, who was Petitioner's co-defendant in the underlying criminal case cited above. (*Id.*) On December 20, 2001 at approximately 3:00 p.m. Petitioner, along with his co-defendant and a juvenile, gave a NMSPA working undercover a bag that contained both methamphetamine and heroin. (*Id.*)  Petitioner further indicated to the NMSPA that he could provide more heroin and methamphetamine if so desired.  (*Id.*)  On March 19, 2002, Petitioner was charged with one count of conspiring and intentionally possessing with intent to distribute over 500 grams of a substance and mixture containing methamphetamine, a Schedule II Controlled Substance, in violation of 21 U.S.C. §§ 846 and 841(a)(1).  (*Id.*)

4. On March 20, 2002, Dennis Candelaria, AFPD attorney, was appointed to represent Petitioner.  (Doc. 6).  On March 22, 2002, Mario A. Esparza, Esq., filed a Motion for substitution of counsel.  (Doc. 16).  On March 26, 2002, the United States Magistrate Judge granted the Motion and Mr. Candelaria was allowed to withdraw from representing Petitioner.  (Doc. 25).

5. On June 14, 2002, Petitioner pleaded guilty to a one count information[4] charging that he unlawfully, knowingly and intentionally combined, conspired, confederated and agreed to commit

---

[3] Note that Criminal Complaint refers to Larry Dominguez Jr. as Defendant, but by order of May 14, 2002, the trial court indicated that Defendant's true name is Alfredo Castro-Pineda.  Doc. 35.

[4] The one count information can be found at Doc. 42.  Petitioner waived his right to prosecution by indictment and consented to the proceeding being made by information.  (Doc. 44).

the following offense in violation of 21 U.S.C.§ 846:

> A. conspiracy to possess with intent to distribute more than 500 grams of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers and to possess with intent to distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin; contrary to 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and
>
> B. to possess with intent to distribute more than 100 grams of a mixture and substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers and to possess with intent to distribute more than 100 grams of a mixture or substance containing a detectable amount of heroin; contrary to 21 U U.S.C. §§ 841(a)(1) and 841(b)(1)(B). (Doc. 45 at 2).

The plea agreement made clear that the maximum penalty the court could impose was: imprisonment "for a period not less than ten (10) years nor greater than life," a fine "not to exceed the greater of $4,000,000.00 or twice the pecuniary gain to the defendant or pecuniary loss to the victim," and a mandatory term of supervised release not to be less than five years. (*Id.* at 2). The agreement also made clear that Petitioner understood the terms and understood that he would not be able to withdraw the plea if the applicable guideline range "is higher than expected or if the Court departs from the applicable guideline range." (*Id.* at 3). The plea agreement also stated that due to the benefit conferred upon Petitioner, no downward or upward departure from the sentencing guideline range would be appropriate and if Petitioner was to seek a downward departure even after the issue was presented to the Court, the Respondent would have the right to withdraw the plea agreement and proceed to trial. (*Id.* at 3-4). The parties stipulated that Petitioner had demonstrated acceptance of responsibility pursuant to U.S.S.G. § 3E.1.1 and that if he provided an oral statement to the United States Probation Officer who prepared the Presentence Report ("PSR") that he would be entitled to a reduction of three levels given that he could establish that entitlement. (*Id.* at 4). Petitioner and

the United States further stipulated that Petitioner's offense level should not be enhanced two levels for obstruction of justice pursuant to U.S.S.G. § 3C1.1 and that Petitioner should be sentenced at the low end of the guideline range. (*Id.*) The plea agreement recounted that the parties understood the stipulations were not binding on the Court and that Petitioner "knowingly waives the right to appeal any sentence within the applicable guideline range. . ." (*Id.* at 4-5).

6. On June 14, 2002, Petitioner waived his right to enter his plea in a felony case before a United States District Judge and filed his consent to proceed before the Honorable Leslie C. Smith, United States Magistrate Judge. (Doc. 43).

**C. Analysis**

7. Though the Tenth Circuit has not yet issued a decision in *United States of America v. Terrance Dewayne Heckard,* CIV 02-285 MV/LCS, the Court has received necessary guidance from the Supreme Court's decision in *United States v. Booker*, __ U.S. __ (2005), 2005 U.S. LEXIS 628.

8. A brief discussion of the Supreme Court's holdings in *Apprendi v. New Jersey* and *Blakely* is initially necessary. *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Blakely*, 124 S. Ct. 2531. The *Apprendi* Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In applying *Apprendi*, the *Blakely* Court held that the State of Washington's criminal code, which allowed judges to impose a sentence above the range designated by the criminal code if they found "substantial and compelling reasons justifying an exceptional sentence," violated a defendant's Sixth Amendment right to trial by jury. *Blakely*, 124 S. Ct. at 2535.

9.      In *Booker*, the Supreme Court held that *Blakely* applies to the United States Sentencing Guidelines. *Booker*, __ U.S. __ (2005), 2005 U.S. LEXIS 628. Further, the Supreme Court's holding that "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt" applies "to all cases on direct review." *Booker*, __ U.S. __ (2005), 2005 U.S. LEXIS 628, slip op. at *14, *46. This result is not surprising, as the Supreme Court in *Schriro v. Summerlin* also decided that *Ring v. Arizona,* which applied *Apprendi* to death sentence cases, was not to be applied retroactively once the decision was final on direct review. *Schriro v. Summerlin*, __ U.S. __, 124 S. Ct. 2519, 2526-2527 (2004); *Ring v. Arizona*, 536 U.S. 584 (2002). Moreover, as the Supreme Court noted in *Tyler v. Cain*, "the Supreme Court is the only entity that can 'make' a new rule retroactive. The new rule becomes retroactive, not by the decisions of the lower court or by the combined action of the Supreme Court and the lower courts, but simply by the action of the Supreme Court." *Tyler v. Cain*, 533 U.S. 656, 663 (2001). The Supreme Court only makes a new rule retroactive to cases on collateral review only when "the Supreme Court *holds* it to be retroactive." *Id.* (emphasis added). In *Booker*, the Supreme Court has not expressly held that *Booker* is to be retroactive to cases on collateral review. *See Booker*, __ U.S. __ (2005), 2005 U.S. LEXIS 628.

10.     Petitioner's case is not before the Court on direct review; it is before the Court on collateral review through a 28 U.S.C. § 2255 Motion. Since the Supreme Court did not specifically hold that *Booker* is to be applied retroactively and instead held that it applied to "to all cases on direct

6

review", Petitioner's § 2255 Motion should be dismissed.[5] *See id.* at *14; *Tyler*, 533 U.S. at 663. Petitioner argues that the Court should view his case as a direct appeal because he waived his right to appeal in his plea agreement. (Doc. 75). Thus, he could not appeal and the only method to bring a proceeding before this court was through a *habeas corpus* proceeding. *Id.* The Court is not persuaded by this argument and believes "direct review" means "direct review" and Petitioner's case is not before the Court on direct review regardless of any waiver of appeal he may have agreed to in his plea agreement. *See Booker*, __ U.S. __ (2005), 2005 U.S. LEXIS 628, *14. To hold that Petitioner's § 2255 Motion is on direct review would in effect make the application of *Booker* retroactive, which is not what the Supreme Court held. *See id.*, *14. As such, Petitioner's § 2255 should be denied.

## IV.   Recommended disposition

I recommend that Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28. U.S.C. § 2255 filed September 8, 2004 (Doc. 75) be denied.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to § 636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW,

---

[5] The Court notes that the Eleventh Circuit as well as a Magistrate Judge in the District of Maine have also concluded that *Booker* is not to be applied retroactively with regard to habeas proceedings. *See In re Anderson*, 2005 U.S. App. LEXIS 1097 (*Booker* not retroactive for purposes of authorizing a second or successive 28 U.S.C. § 2255 or 28 U.S.C. § 2254 Motion); *Stevens v. United States of America*, 2005 U.S. Dist. LEXIS 608 (28 U.S.C. § 2255 Motion).

Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

                                              **LESLIE C. SMITH**
                                              **UNITED STATES MAGISTRATE JUDGE**